UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        -against-                                 08 Civ. 2979 (LAK)

BIOVAIL CORP. et al.,

        Defendants.
------------------------------------- x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff, the Securities and Exchange Commission ("SEC"), brought this action against, Eugene Melnyk, Brian Crombie, and John Miszuk, former executives of Biovail Corporation ("Biovail"), for alleged violation of various provisions of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the rules promulgated thereunder. In substance, the complaint alleges that (1) Melnyk and Crombie made false or misleading statements regarding a truck accident's impact on Biovail's earnings in the third quarter of 2003 and that (2) Miszuk signed Biovail's Forms 6-K for the second and third quarters of 2003, which used the wrong Canadian-U.S. dollar exchange rate to account for a Canadian dollar-denominated debt Biovail owed to the Glaxo Group, Ltd. The matter is before the Court on the SEC's partial motion for summary judgment against Melnyk, Crombie, and Miszuk.[1]

---

[1]     The SEC has moved for partial summary judgment but has not clearly identified the claims on which it seeks a determination. Its memoranda of law, and the defendants opposition papers, address only the legal standards for violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5,

## I.  Legal Standard

On a motion for summary judgment, the moving party bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2]  There is a "genuine issue" of fact if there is evidence from which a reasonable jury could decide the fact in the non-movant's favor.[3]  The court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."[4]

The SEC alleges that the defendants' statements were false and misleading in violation of Section 17(a) of the Securities Act,[5] Section 10(b) of the Exchange Act,[6] and Exchange Act Rule 10b-5.[7]  The three provisions have essentially the same elements.  The SEC must prove that each defendant (1) made a material misrepresentation or a material omission, (2) with *scienter*,

---

  17 C.F.R. § 240.10b-5.  The Court therefore assumes that the SEC has moved for partial summary judgment on the claims for violations of Section 17(a) by defendant Crombie and Section 10(b) and Rule 10b-5 by defendants Melnyk, Crombie, and Miszuk only.

[2]  *See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999); FED. R. CIV. P. 56(c).

[3]  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

[4]  *Id.* (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

[5]  15 U.S.C. § 77q(a).

[6]  15 U.S.C. § 78j(b).

[7]  17 C.F.R. § 240.10b-5.

(3) in connection with the purchase or sale of securities.[8]

*Scienter* may be established by evidence showing either an intent to defraud or recklessness.[9] Recklessness, in turn, is shown if the defendants' conduct was "'highly unreasonable' and 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"[10] The level of recklessness required is "conscious recklessness--i.e., a state of mind *approximating actual intent, and not merely a heightened form of negligence*."[11]  "An *egregious* refusal to see the *obvious*, or to *investigate the doubtful*, may in some cases give rise to an inference of . . . recklessness."[12]

A misrepresentation is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]."[13]  That is, there must be a

---

[8]   *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)).  There is no scienter requirement for the SEC to obtain an injunction under Securities Act Sections 17(a)(2) and (3). *Id.*

The language above reflects the "in connection with the purchase or sale of any security" requirement in Section 10(b) of the Exchange Act and Rule 10b-5.  Section 17(a) of the Securities Act requires that the fraud be "in the offer or sale of any securities."  15 U.S.C. § 77q(a).  The difference is immaterial in the instant case.

[9]   *South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 108-09 (2d Cir. 2009)

[10]  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978)) (alteration in *Rolf*).

[11]  *South Cherry St., LLC*, 573 F.3d at 109 (quoting *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)) (emphasis in *South Cherry St., LLC*).

[12]  *Id.* (quoting *Chill v. Gen. Elec.Co.*, 101 F.3d 263, 269 (2d Cir. 1996)) (internal quotation marks omitted) (emphasis in *South Cherry St., LLC*).

[13]  *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988));

"substantial likelihood that the [statement] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[14] There is no "formulaic approach" to determining materiality.[15] It is fact-specific and depends on all the relevant circumstances.[16] Both quantitative and qualitative factors may be considered in evaluating materiality, and the non-exhaustive list of factors in SEC Staff Accounting Bulletin ("SAB") 99[17] bears on this evaluation.[18] The plaintiff has not carried his burden if the evidence adduced shows only that a reasonable investor might find the misrepresentation important.[19] The plaintiff, however, need not demonstrate that a reasonable investor would have acted differently.[20]

Issues of scienter and materiality are difficult ones on which to grant summary judgment as they are particularly fact and context dependant.[21] Indeed, summary judgment on the

---

[14] *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000).

[15] *ECA & Local 134 IBEW Joint Pension Trust of Chicago*, 553 F.3d at 197.

[16] *Id.* at 204 ("[B]right-line numerical tests for materiality are inappropriate[.]"); *Ganino*, 228 at 162; *see also Basic Inc.*, 485 U.S. at 236 & n.14.

[17] *ECA & Local IBEW Joint Pension Trust of Chicago*, 553 F.3d at 197 (citing *Basic Inc.*, 485 U.S. at 240.)

[18] 64 Fed. Reg. 45150 (1999).

[19] *ECA & Local IBEW Joint Pension Trust of Chicago*, 553 F.3d at 197-98*; Ganino*, 228 F.3d at 163.

[20] *Ganino*, 228 F.3d at 162.

[21] *Id.*

See *ECA & Local IBEW Joint Pension Trust of Chicago*, 553 F.3d at 197 ("[C]ourts must engage in a fact-specific inquiry" in determining materiality.); *Press v. Chem. Inv. Servs.*

5

issue of materiality may be inappropriate even when the material facts are undisputed as those facts are "merely the starting point" for the "delicate assessment[] of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him."[22]

## II.     The Truck Accident – Defendants Melnyk and Crombie

The SEC seeks summary judgment against Melnyk and Crombie for statements they allegedly made in a press release and on a conference call on October 3, 2003 regarding the impact of an accident involving a truck carrying the drug Wellbutrin XL ("WBXL") on Biovail's revenue in the third quarter of 2003 (the "truck accident statements").  Specifically, Biovail's October 3, 2003 press release stated that the "preliminary results" of its 2003 third quarter revenue analysis would "be below previously issued guidance," that "[c]ontributing significantly to this unfavorable variance was the loss of revenue and income associated with a significant in-transit shipment loss of [WBXL] as a result of a traffic accident," and that "[r]evenue associated with this shipment is in the range of $10 to $20 million."[23]  On the October 3, 2003 conference call, Crombie stated that the truck accident would "have a material negative impact on Biovail's third quarter revenue.  As a result of this accident, Biovail currently estimates that its total third quarter revenues from [WBXL]

---

[22]  *Corp*, 166 F.3d 529, 538 (2d Cir. 1999) ("Whether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact.") (internal quotation marks omitted); *First Jersey Sec., Inc.*, 101 F.3d at 1467.

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 452 (1976).

[23]  SEC R. 56.1 St. ¶¶ 29-31; Crombie R. 56.1 St. ¶¶ 29-31; Melnyk R. 56.1 St. ¶¶ 29-31; Declaration of Eduardo A. Santiago ("Santiago Decl.") Ex. 28.

will now be below $10 million."[24]  On the same call, Melnyk stated that the "accident will have a negative financial impact on Biovail's third quarter revenues," and that the impact would be in the $10 to $20 million range.[25]  The SEC alleges also that Melnyk and Crombie repeated statements like these over the next weeks to the media, its bankers, and in "road show" presentations to potential investors.  Melnyk and Crombie dispute this.  As the court can not conclude that any of the statements were material as a matter of law, summary judgment is inappropriate.

In support of its motion, the SEC has adduced evidence from which a reasonable jury could conclude that there was a substantial likelihood that a reasonable investor would consider the truck accident statements as altering the total mix of information available.[26]  Both Melnyk and Crombie, however, have adduced evidence that, taken in the light most favorable to them, could greatly diminish the informative value of the truck accident statements.  For instance, they have adduced evidence that the statements in the press release and on the conference call were surrounded by other statements indicating that the results were preliminary and subject to revision.[27]  Similarly,

---

[24] SEC R. 56.1 St. ¶ 32; Crombie R. 56.1 St. ¶ 32.

[25] SEC R. 56.1 St. ¶ 33; Melnyk R. 56.1 St. ¶ 33.

[26] *See*, *e.g.*, Santiago Decl. Ex. 34, at 114; Santiago Decl. Ex. 28, at 76.

[27] *See*, *e.g.*, Santiago Decl. Ex. 28, at 76 ("Biovail announced today that while it has not completed a final compilation and analysis of its 2003 third quarter, preliminary results indicate that revenues will be below previously issued guidance . . . ."); Santiago Decl. Ex. 34, at 114 ("The accident is still under investigation and we know little more than has been reported in the news.  We're unsure as to extent of the damage to product in the shipment."); *id.* at 128 ([W]e're just trying to be conservative at this point. . . . [T]he main thing we wanted to do here was to highlight to investors as soon as we knew that this was an issue for the third quarter."); *id.* ("I really don't have an idea right now. . . . [W]e found out about this late yesterday, and we haven't even – you know, again, we had a conference call as soon as we possibly could.  And we'll have a lot more information by the end of the month."); *id.* ("[W]e look forward to providing further guidance . . . on our earnings call at

both the press release and the conference call contained more specific (and seemingly accurate) information about Biovail's third quarter revenue overall, revenue from WBXL in particular, and other negative company news.[28]

A reasonable jury certainly could conclude that the truck accident statements were material. In light of all the evidence, however, a reasonable jury considering all the circumstances could conclude also that the statements would not have significantly altered the total mix of information available to a reasonable investor. In consequence, summary judgment is inappropriate.

III.     *The Foreign Exchange Loss – Defendant Miszuk*

The SEC seeks summary judgment against defendant Miszuk for signing Biovail's Forms 6-K for the second and third quarters of 2003. It is undisputed that the forms were false because Biovail used the wrong Canadian-U.S. dollar exchange rate to account for the outstanding balance of a Canadian dollar-denominated debt Biovail owed to GSK. As the Court can not conclude as a matter of law that Miszuk acted with the requisite *scienter*, however, summary judgment would be inappropriate.

---

the end of this month.").

[28]   *See, e.g.*, Santiago Decl. Ex. 34, at 114 ("Biovail currently estimates that its total third quarter revenues from [WBXL] will now be below $10 million."); Santiago Decl. Ex. 28, at 76 ("[P]reliminary results indicate that revenues will be below previously issued guidance and will be in the range of $215 million to $235 million[.]"); *id.* at 77 ("[S]ince Biovail shares in a percentage of the gross profit of [generic omeprazole], significant credits issued by the distributor during the third quarter 2003 could have a negative effect on Biovail's participating interest of up to $15 million in net income. As well, it can be anticipated that there could be a fourth quarter 2003 negative income impact of $15 to $20 million."); *id.* ("[S]hipments [of Aventis], which had been anticipated prior to 30, 2003, arrived immediately following quarter-end. As a result, these additional shipments will not be included in third quarter 2003 revenue as expected[.]").

8

The SEC has adduced evidence that Miszuk had knowledge of facts or access to information indicating that Biovail was using the wrong exchange rate to account for the outstanding loan balance in its quarterly reports. It relies principally on a short series of emails from July 2003 among Miszuk, Peter McLean, Biovail's senior director of legal accounting, and Arlene Fong, the controller of the relevant Biovail subsidiary, and a second series of emails in August among Miszuk, Graham Desson, an employee in Biovail's treasury department, and others.[29] A reasonable jury could conclude from this evidence that Miszuk knew that Biovail's accounting was incorrect or that the risk was so obvious as to approximate knowledge. But that is not the only inference that the facts support.

A reasonable jury could conclude, for instance, that the emails, when read in context and considered with other evidence, show that Miszuk was aware in July of a potential accounting impropriety, delegated the responsibility to his subordinates to examine it further, and then never heard that there definitely was a problem.[30] At least some of the July emails reasonably could be construed to express opinions, and the writers of the July emails testified that they had not concluded with certainty that an accounting problem existed at the time the emails were sent.[31] Similarly, a reasonable jury could conclude that the August emails did not adequately notify Miszuk that the issue had not been resolved. They dealt primarily with purchasing hedges for Biovail's Canadian

---

[29] *See* Santiago Decl. Exs. 77, 84, 85, 97, 98; SEC Br. at 29-32.

[30] Miszuk testified that he never received analysis from McLean or Fong about whether the accounting was proper. Declaration of Jodi L. Avergun ("Avergun Decl.") Ex. 6, at 256:15-257:13. Similarly, McLean and Fong each testified that they never provided any analysis to Miszuk after the initial email exchange. Avergun Decl. Ex. 4, at 102:5-21, Ex. 5, at 181:10-185:17.

[31] Avergun Decl. Ex. 4, at 96:18-97:4; Avergun Decl. Ex. 5, at 189:7-25.

dollar holdings and only parenthetically with the accounting treatment of Biovail's GSK debt.[32] Miszuk, moreover, was only copied on the main August email on which the SEC relies, not its direct recipient, and testified that it did not remind him of the accounting issue he discussed with McLean and Fong.[33]

Miszuk's actions here with respect to the accounting issue may well reflect mismanagement and possibly negligence. Perhaps they were worse. But this record does not compel the conclusion that he acted with an "egregious refusal to see the obvious, or to investigate the doubtful."[34] In consequence, summary judgment would be inappropriate.

## Conclusion

For the foregoing reasons, the SEC's motion for partial summary judgment [DI 160] is denied.

SO ORDERED.

Dated:      June 16, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[32] Santiago Decl. Ex. 85.

[33] *Id.*; Avergun Decl. Ex. 6, at 264:21-265:6.

[34] *South Cherry St., LLC*, 573 F.3d at 109.